United States District Court
Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

REGINALD KING,

Plaintiff,

v.

TESLA, INC.,

Defendant.

Case No.  25-cv-03463-MMC

**ORDER GRANTING DEFENDANT'S MOTION TO COMPEL ARBITRATION**

Before the Court is defendant Tesla, Inc.'s ("Tesla") "Motion to Compel Arbitration," filed May 19, 2025. Plaintiff Reginald King ("King") has filed opposition, to which defendant has replied. Having read and considered the papers filed in support of and in opposition to the motion, the Court rules as follows.[1]

King is a former employee of Tesla, an automotive company that "design[s], manufactur[es], and sell[s] electric cars and solar products." (See Declaration of Ben Flesch ("Flesch Decl.") ¶ 2.) On August 1, 2019, King, after applying through Tesla's online process, accepted Tesla's offer of employment by electronically signing an offer

---

[1] By Order filed July 10, 2025, the Court took the matter under submission.

United States District Court
Northern District of California

letter received via "a secure link" sent to King's "personal email account" (hereinafter, "employment agreement"), which offer letter "contained an agreement to arbitrate." (See id. ¶¶ 9-11.) On August 5, 2019, King began his employment with Tesla as a Production Associate (see id. ¶ 13), and on November 16, 2023, his employment was terminated (see Compl. ¶ 57).

King now brings against Tesla the following fourteen causes of action arising from his employment and the termination thereof: "Retaliation under FEHA," "Racial Discrimination under FEHA," "Whistleblower Protection Act," "Retaliation for Reporting Workplace Safety Violations," "Failure to Prevent Discrimination and Retaliation," "Hostile Work Environment under FEHA," "Wrongful Discharge in Violation of Public Policy," "Negligent Hiring, Supervision, or Retention," "Failure to Pay Overtime Compensation," "Failure to Provide Accurate Itemized Wage Statements," "Failure to Pay Wages for All Hours Worked," "Unfair Business Practices," "Waiting Time Penalties," and "Violation of PAGA." (See Compl. at 10-27.)

By the instant motion, Tesla seeks, pursuant to the Federal Arbitration Act ("FAA"), an order compelling arbitration. In support thereof, Tesla cites to the employment agreement, which provides that "any and all disputes, claims, or causes of action, in law or equity, arising from or relating to your employment, or the termination of your employment, will be resolved, to the fullest extent permitted by law by final, binding and private arbitration in your city and state of employment conducted by the Judicial Arbitration and Mediation Services/Endispute, Inc. ("JAMS"), or its successors, under the then current rules of JAMS for employment disputes . . ." (See Flesch Decl. Ex. A at 2.) As noted, King opposes the motion.

The district court's role under the FAA is "limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the

2

United States District Court
Northern District of California

dispute at issue." See Chiron Corp. v. Ortho Diagnostic Systems, Inc., 207 F.3d 1126, 1130 (9th Cir. 2000). "If the response is affirmative on both counts, then the [FAA] requires the court to enforce the arbitration agreement in accordance with its terms." See id.

Here, there is no dispute as to whether King is a party to the employment agreement or whether the arbitration clause therein encompasses his claims. King argues, however, that the arbitration clause is invalid on grounds of unconscionability.

Pursuant to the FAA, an arbitration agreement is invalid where it is unenforceable under "generally applicable contract defenses" recognized by state law, such as "unconscionability." See AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 339 (2011). "Under California law, courts may refuse to enforce any contract found to have been unconscionable at the time it was made, or may limit the application of any unconscionable clause." See id. at 340 (internal quotation and citation omitted). "A finding of unconscionability requires [both] a procedural and a substantive element, the former focusing on oppression or surprise due to unequal bargaining power, the latter on overly harsh or one-sided results." See id. (internal quotation and citation omitted).

### A. Procedural Unconscionability

"Oppression occurs where a contract involves lack of negotiation and meaningful choice" while "surprise [occurs] where the allegedly unconscionable provision is hidden within a prolix printed form." See Pinnacle Museum Tower Assn. v. Pinnacle Mkt. Dev. (US), LLC, 55 Cal. 4th 223, 247 (2012).

Here, King has shown a minimal degree of procedural unconscionability, given the "adhesive nature of the agreement," see Serafin v. Balco Props. Ltd., LLC, 235 Cal. App. 4th 165, 180 (finding "minimal degree of procedural unconscionability" where "stronger party draft[ed] [employment agreement] and present[ed] it to the weaker party on a take-

3

United States District Court
Northern District of California

it-or-leave-it basis"), as well as the "format[ting]" thereof, see Chee v. Tesla, Inc., 732 F. Supp. 3d 1056, 1063-64 (N.D. Cal. 2024) (finding element of surprise "marginal" where arbitration clause was located "midway through the second page of [p]laintiff's Offer Letter in the same small print as the rest of the letter, with no headings, boldface, italicized, or otherwise emphasized text," but, "to the extent the arbitration provision was buried, it was buried shallowly," given short length of Offer Letter and number of pages thereof comprising arbitration agreement). Such minimal degree of unconscionability, however, constitutes "the beginning and not the end of the analysis." See id. "Under the sliding-scale approach," King must "make a strong showing of substantive unconscionability to render the arbitration provision unenforceable." See id. The Court thus turns to the question of substantive unconscionability.

### B. Substantive Unconscionability

In support of his argument as to substantive conscionability, King points to several provisions of the arbitration clause, which the Court addresses in turn.

### 1. Lack of Mutuality and Illusory Injunctive Relief Exception

Although King acknowledges the arbitration clause "purports to bind both parties," he contends, Tesla, "as the employer, is far more likely to be sued," (see Opp'n. at 8:23-27), thereby resulting in a "lack of mutuality" (see id. at 8:21). As Tesla points out, however, mutuality, under California law, generally requires only that the arbitration clause be bilateral, not that both parties are equally likely to bring claims. See Pinnacle Museum Tower Assn. v. Pinnacle Mkt. Dev. (US), LLC, 55 Cal. 4th 223, 248 (2012) (finding mutuality where challenged clause was limited to construction disputes and one party was more likely to bring construction claims). Here, given that both parties are required to arbitrate claims "arising from or relating to [the employee's] employment, or the termination of [the employee's] employment" (see Flesch Decl. Ex. A at 2) and the

4

United States District Court
Northern District of California

agreement does not "exempt[] from arbitration the claims [Tesla] is most likely to bring against its employees," see Ferguson v. Countrywide Credit Indus., Inc., 298 F.3d 778, 785 (9th Cir. 2002), the arbitration clause is bilateral and thus there is no lack of mutuality.

Similarly, King argues that the provision stating "claims for temporary or emergency injunctive relief to preserve the status quo prior to and/or in aid of arbitration are permitted," is "a one-sided exception benefiting only the employer." (See Opp'n. at 9:19-24.) This provision, however, like the provision described above, is mutual in nature, and, consequently, not unconscionable. See Lombardi v. DirecTV, Inc., 546 F. App'x 715, 716 (9th Cir. 2013) (holding fact that "customers ha[d] to arbitrate their claims for injunctive relief against [defendant company] whereas [defendant company] [was] unlikely to seek injunctive relief from its customers[,] d[id] not make the arbitration agreement unconscionable").

### 2.  Waiver of Public Injunctive Relief

Next, King argues that the arbitration clause's restrictive language as to representative actions, such as "any claim . . . must be brought in a party's individual capacity, and not as a plaintiff or class member in any purported class or representative proceeding" (see Flesch Decl., Ex. A at 2), constitutes an impermissible waiver of his "right to seek public injunctive relief" (see Opp'n. at 9:13-15). To the extent plaintiff is arguing a class action waiver is unconscionable, King's argument is unavailing. See AT&T Mobility LLC v. Concepcion, 563 U.S. 333 (2011) (holding FAA preempts California rule "classifying most collective-arbitration waivers in consumer contracts as unconscionable"); see also Carter v. Rent-A-Ctr., Inc., 718 F. App'x 502, 504 (9th Cir. 2017) (finding "argument that a class action waiver, by itself, is unconscionable under state law or that an arbitration agreement is unconscionable solely because it contains a

5

class action waiver" is "foreclosed by" AT&T Mobility LLC). To the extent King is focusing on the nature of the relief sought, his argument likewise is unavailing, as King is not seeking public injunctive relief. See Magana v. DoorDash, Inc., 343 F. Supp. 3d 891, 900 (N.D. Cal. 2018) (defining public injunctive relief as "relief that has the primary purpose and effect of prohibiting unlawful acts that threaten future injury to the general public"; holding "[r]elief that has the primary purpose or effect of redressing or preventing injury to an individual plaintiff—or to a group of individuals similarly situated to the plaintiff—does not constitute public injunctive relief") (internal quotation and citation omitted).

### 3. Discovery Limitations

King further contends that sufficient discovery is not effectively guaranteed in the arbitration clause, and that, in particular, the provision giving the arbitrator "the authority to compel adequate discovery for the resolution of the dispute" is insufficient "to guarantee the specific discovery tools necessary for employment cases—depositions, interrogatories, document requests, or expert discovery." (See Opp'n. at 10:4-5.) Courts in this district, however, have issued well-reasoned decisions upholding identical discovery provisions, see, e.g., Jackson v. Tesla, Inc., No. 24-CV-06110, 2024 WL 5173260, at *2 (N.D. Cal. Dec. 19, 2024) (holding arbitration clause not substantively unconscionable where JAMS arbitrator was given "the authority to compel adequate discovery for the resolution of the dispute"); Chee v. Tesla Inc., 732 F. Supp. 3d 1056, 1066 (N.D. Cal. 2024) (same), and King cites to no authority holding to the contrary. Moreover, as courts in this district have noted, JAMS Rule 17 provides for depositions, which provision suffices to ensure adequate discovery. See, e.g., Sweeney v. Tractor Supply Co., 390 F. Supp. 3d 1152, 1161 (N.D. Cal. 2019) (holding "Rule 17(b) provides for sufficient discovery under California law and is not unconscionable"); Sanchez v. Gruma Corp., 2019 WL 1545186, at *8 (N.D. Cal. Apr. 9, 2019) (finding, where JAMS

6

Rules were incorporated in arbitration agreement, "the arbitration agreement provide[d] for more than minimal discovery"). Again, King does not identify any authority to the contrary.

### 4. Cost-Shifting Ambiguity

Additionally, King contends the provision that "[Tesla] shall pay all fees in excess of those which would be required if the dispute was decided in a court of law" (see Flesch Decl. Ex. A. at 2) is "problematic because it could require [p]laintiff to pay court-equivalent filing fees, it doesn't clarify what 'fees' are covered, . . . and it doesn't address costs like arbitrator travel, venue rental, or administrative expenses," (see Opp'n. at 10:12-16.) In particular, King argues, the provision is impermissible because, under California law, an arbitration clause must not "require employees to pay either unreasonable costs or any arbitrators' fees or expenses as a condition of access to the arbitration forum." (See Opp'n. at 10:16-19 (citing Armendariz, 24 Cal. 4th at 102).)

Under California law, "when an employer imposes mandatory arbitration as a condition of employment, the arbitration agreement or arbitration process cannot generally require the employee to bear any type of expense that the employee would not be required to bear if he or she were free to bring the action in court." See Ingle v. Cir. City Stores, Inc., 328 F.3d 1165, 1177 (9th Cir. 2003) (quoting Armendariz, 24 Cal. 4th at 110-11). Here, the arbitration clause requires Tesla to pay all arbitration fees beyond what would be incurred in court, and, pursuant to the JAMS Rules, "[i]f an Arbitration is based on a clause or agreement that is required as a condition of employment, the only fee that an Employee may be required to pay is the initial JAMS Case Management Fee." (See Lee Decl., Ex. C at 23). Courts in this district have found the JAMS Case Management Fee to be consistent with California law and not substantively unconscionable, see, e.g., Kessler v. Oakwood Worldwide (US) LP, No. 20-CV-06524,

United States District Court
Northern District of California

United States District Court
Northern District of California

2021 WL 5414323, at \*5 (N.D. Cal. Mar. 10, 2021) (finding "initial JAMS Case Management Fee" was "not unconscionable, as it does not require [p]laintiff to pay costs that are not equivalent in type and amount than what would be required in a court action"); Wu v. JPMorgan Chase Bank, N.A., No. 19-CV-00363, 2019 WL 4261880, at \*12 (C.D. Cal. Aug. 5, 2019) (same); see also Mikhak v. Univ. of Phoenix, No. 16-CV-00901, 2016 WL 3401763, at \*11 (N.D. Cal. June 21, 2016) (finding "one-time payment . . . equal to [court] filing fee" consistent with Armendariz requirement), and King cites to no conflicting authority.

This Court agrees that the above-referenced Case Management Fee is not a "type of expense that the employee would not be required to bear if he or she were free to bring the action in court,"[2] and accordingly, finds the cost-shifting provision is not substantively unconscionable.

### 5. Remaining Arguments

King raises two final objections to the arbitration clause that likewise are unavailing. First, King argues the employment agreement's confidentiality provision, which prohibits disclosure of confidential or proprietary information, "gags employees from exposing workplace violations." (See Opp'n. 11:10-11.) As Tesla points out, however, King does not "explain how this confidentiality provision bears on the unconscionability analysis of the Arbitration Agreement" (see Reply at 9:22-24), nor does King cite any authority supporting his argument. Second, King argues the "agreement fails to clearly define its scope, leaving employees uncertain about their rights," because,

---

[2] The JAMS Case Management Fee is $400, see Arbitration Schedule of Fees and Costs, JAMS, https://www.jamsadr.com/arbitration-fees (last visited July 15, 2025), and the filing fee in this district is $405, see Court Fee Schedule Summary, United States District Court, Northern District of California, https://cand.uscourts.gov/about/clerks-office/court-fees/ (last visited July 15, 2025).

8

according to King, "[t]he agreement states disputes will be resolved by arbitration 'to the fullest extent permitted by law.'" (See Opp'n. at 11:14-18) (citing Sandquist v. Lebo Automotive, Inc., 1 Cal. 5th 233, 247-248 (2016) (holding "[a]mbiguities in arbitration agreements must be construed against the drafter")).) In so arguing, King's paraphrased citation to the arbitration agreement omits the clear language immediately preceding the quoted phrase, and the language at issue in the only case he cites, Sandquist, is readily distinguishable from the above language challenged here, see Sandquist 1 Cal. 5th at 245-6, nor does the case in any manner address the subject of substantive unconscionability.

**C.  Stay**

The FAA provides that, when "any issue" in an action is "referable to arbitration" under an arbitration agreement, the district court "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." See 9 U.S.C. § 3. Accordingly, plaintiff's individual claims, including his individual PAGA claim, will be stayed pending arbitration of those claims. See Johnson v. Lowe's Home Centers, LLC, 93 F.4th 459, 465 (9th Cir. 2024) (holding under California law a plaintiff can be "compelled . . . to arbitrate his individual PAGA claims). Further, because King's representative PAGA claims are "derivative of the substantive claims which will proceed to arbitration," see id. (finding if plaintiff "los[es] on the merits of his individual PAGA claims in arbitration, he no longer ha[s] standing to pursue his non-individual PAGA claims in court"), they will be stayed pending resolution of the arbitration proceedings, see Gonzales v. Emeritus Corp., 407 F. Supp. 3d 862, 868 (N.D. Cal. 2019) (staying representative PAGA claims pending arbitration).

**CONCLUSION**

For the reasons stated above, Tesla's Motion to Compel Arbitration is hereby

GRANTED, all claims other than King's non-individual PAGA claims are hereby REFERRED to arbitration, and the instant action is hereby STAYED pending completion of arbitration proceedings.

**IT IS SO ORDERED.**

Dated: July 28, 2025

_____
MAXINE M. CHESNEY
United States District Judge

United States District Court
Northern District of California